# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

**ANDREW RYAN LESLIE,**

     **Petitioner,**

**v.**                                   **Case No. 3:19-cv-1300-J-39JBT**

**UNITED STATES OF AMERICA,**

     **Respondent.**

---

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT JUDGMENT AND SENTENCE BY A PERSON IN FEDERAL CUSTODY

The Petitioner, Andrew Ryan Leslie (hereinafter referred to as "Mr. Leslie"), by and through counsel of record, pursuant to 28 U.S.C. § 2255, hereby files this Memorandum of Law in Support of Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Petitioner asserts six (6) grounds for which relief should be granted in support of his motion. As will be discussed in more detail infra, 28 U.S.C. § 2255 lists multiple ways a prisoner in custody under sentence of a court, claiming certain rights, may seek relief. It also explains various reasons why such relief is appropriate. In pertinent part, the statute provides that when "there has been such a denial or infringement of the constitutional rights of a prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set aside the judgment." 28 U.S.C.S. § 2255(b) (LexisNexis) (LexisNexis, Lexis Advance through Public Law 116-158, approved August 14, 2020). For the reasons set forth below, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 should be granted as required by justice when there has been a denial and infringement of his constitutional rights as a prisoner. This case

stems from myriad issues of ineffective assistance of counsel in a Florida criminal case regarding violations of 18 U.S.C. § 2255.

## STATEMENT OF THE FACTS

In 2015, the United States Department of Homeland Security, Homeland Security Investigations ("HSI") was investigating websites that depicted child pornography. (Case 3:16-cr-00154-BJD-JBT, Presentence Investigation Report (Doc. 50; "PSR") at pg. 6 ¶ 8.) The following year Mr. Leslie was identified as a member and administrator of websites that hosted and exchanged child pornography. (*Id.* at pg. 7 ¶ 9.) On October 18, 2016, HSI agents obtained and executed a search warrant for Mr. Leslie's Florida residence. Upon their arrival, Mr. Leslie was found present with a child ("Child 1"), and in possession of an unencrypted digital camera containing pornographic images of Child 1 and an additional child ("Child 2"). (*Id.* at ¶10.)

As part of the search of Mr. Leslie's home, HSI seized and took into custody multiple electronic devices, including computer media. (*Id.* at pg. 5-6 ¶ 6(d).)  These materials were encrypted, and the Government did not have access to them.

The images of Child 1 and Child 2 on the digital camera formed the basis for Counts 1 and 2 in this case. (*Id.* at pg. 7 ¶ 9.) A federal grand jury indicted Mr. Leslie on October 27, 2016[1]. (*Id.* p. 4 ¶1.) On March 29, 2017, Mr. Leslie was also indicted in the Middle District of Tennessee (Docket No.: 3:17-cr-00044-3, *Id.* at p.12, ¶63) on three charges, including participating in a child exploitation enterprise.

---

[1]      The Presentence Report states incorrectly that the indictment was returned in 2017.

On December 1, 2016, Mr. Leslie entered into a proffer agreement between Assistant United States Attorney D. Rodney Brown, Assistant Federal Public Defender Mark J. Rosenblum, and himself.  The agreement was memorialized by a letter.  The agreement was confusing in that it offered direct use immunity; however, the agreement specifically excluded immunity for "crimes of violence." The letter stated that the reason for the proffer was so that Mr. Leslie could talk to the Government regarding child pornography, a crime of violence.

More specifically, in this letter, Mr. Leslie agreed to provide information to the Government about "potential violations of federal criminal laws, involving, but not necessarily limited to, violations of 18 U.S.C. §§ 2241, 2251, 2251A, and 2252 *et seq.*, pertaining to the sexual abuse and exploitation of children." (Case 3:19-cv-01300-BJD-JBT, Doc. 20-1, Attachment 1, pg. 1.)

The letter stated that "except as provided below, in any prosecution brought by the United States against [Mr. Leslie], no statements or other information provided by [Mr. Rosenblum or Mr. Leslie] during the interview session will be admissible against [Mr. Leslie] in the government's case-in-chief or at sentencing." (*Id.*) The letter further stated:

> [T]his grant of use immunity also does not extend to crimes of violence, unless specifically indicated herein. [Mr. Rosenblum and Mr. Leslie] understand that crimes of violence include, but are not limited to, violations of 18 U.S.C. §§ 2241-2245, 2251, 2251A, 2252A(g)—including conspiracy to violate these sections, attempt to violate these sections, and aiding and abetting violations of these sections—as well as the rape or sexual abuse of a minor."

*Id*. at pg. 3. Continuing the letter specified:

> To avoid any misunderstanding, the specific terms of this grant of use immunity are: …

3

2.[Mr. Rosenblum and Mr. Leslie] understand that this grant of use immunity DOES NOT extend to information contained on encrypted digital devices, or encrypted portions of digital devices, currently in the custody of law enforcement pursuant to the search of [Mr. Leslie's] residence conducted on October 18, 2016. [Mr. Leslie] agrees to provide any necessary passwords or passphrases in order to decrypt any such devices and understand that [Mr. Leslie] may face prosecution, without limitation, based on information contained therein. [Mr. Rosenblum and Mr. Leslie] also understand that this grant of use immunity DOES NOT extend to crimes of violence, unless specifically indicated herein. [Mr. Rosenblum and Mr. Leslie] understand that crimes of violence include, but are not limited to, violations of 18 U.S.C.—28 U.S.C. §§ 2241-2245, 2251, 2251A, 2252A(g) conspiracy to violate these sections, attempt to violate these sections, and aiding and abetting violations of these sections—as well as the rape or sexual abuse of a minor.

There were multiple occasions where Mr. Leslie provided information to HSI special agents and defense counsel.  (Case 3:16-cr-001540BJD-JBT, Doc. 50, pg. 8, ¶ 17.) Mr. Leslie provided his passwords and passphrases to the Government, in order to open and decrypt the computer hard drives and storage media.  It should be noted that but for the forty-two (42) images on the Toshiba SD card, all other child pornography was locked with sophisticated encryption software and unavailable to forensic examiners. Law enforcement used passwords and passphrases, provided by Mr. Leslie to unencrypt the computers and storage devices. Upon receiving the passwords, the media was forensically examined.

Law enforcement estimated that Mr. Leslie had "produced, received, distributed, and possessed numerous images and videos depicting child pornography." (*Id.* at pg. 7, ¶ 13.) Included on the computer hard drives were transcripts or "logs" of online conversations between Mr. Leslie and another "online" companion. In these logs, Mr. Leslie discussed engaging in sexual activity with several minor children. (*Id.* at pg. 8, ¶ 13.) Along with his online companion, Mr. Leslie discussed "adopting or fostering toddlers in order to be able to sexually abuse them." *Id.* Ultimately, law enforcement determined "there were five children who had been sexually abused by Mr. Leslie." (*Id.* at ¶ 15.) There were only two children depicted on the Toshiba SD card and

4

all photos were taken on the same day. (Guilty Plea- Factual Basis, Case 3:16-cr-00154-BJD-JBT, PageID 69.)

Forensic review of Mr. Leslie's electronic devices revealed approximately 33,000 images and videos of child pornography. These images included videos Leslie produced of the five aforementioned children. More specifically, Mr. Leslie reported to the Government that he had sexually abused three additional children and took photographs of a fourth child. (Doc. 50, "PSR" at pg. 8, ¶¶ 16-17.) It cannot be refuted that Mr. Leslie provided fresh information to law enforcement. On more than one occasion, Mr. Leslie was counseled to provide particulars unknown to the Government under the guise of an immunity protected agreement, when, because of the violent nature of the information and data, immunity was specifically excluded from the agreement. Mr. Leslie admitted to sexually abusing other children, including Child 3, and taking photos of Child 4. (*Id*. at pg. 14, ¶ 71.) The Government was able to discover that Mr. Leslie had produced, received, distributed, and possessed numerous images and videos depicting child pornography. (Guilty Plea- Factual Basis, Case 3:16-cr-00154-BJD-JBT, PageID 70.) At every step of the process, Mr. Leslie divulged previously undisclosed information believing that he was immune from prosecution and believing that he might be eligible for a 5K sentence reduction. The psycho-sexual evaluation report of Mr. Leslie provided additional information to the Court and Government that revealed unknown victims and disgusting behaviors by Mr. Leslie.

## II.

## <u>PROCEDURAL BACKGROUND</u>

On October 27, 2016, in the United States District Court for the Middle District of Florida, Jacksonville Division, a federal grand jury indicted Mr. Leslie with the production of child pornography, a violation of 18 U.S.C. § 2251, under docket number: 3:16-CR-00154-J-39JBT on two Counts. October 6, 2017, Mr. Leslie pled guilty to Counts 1 and 2 by way of a plea agreement. On March 1, 2018, Mr. Leslie received a combined sentence of seven hundred twenty (720) months in prison, consisting of two, three hundred sixty (360) month terms to run consecutively. An appeal from the judgment of conviction and sentence was filed in the Eleventh Circuit Court of Appeals under docket/case number: 18-11183. Per curium opinion on November 9, 2018, the Court held there were no arguable issues of merit, and the conviction and sentence were affirmed. Mr. Leslie then filed this action for relief under 28 U.S.C. § 2255.

For this motion, Mr. Leslie asserts six (6) grounds for which he is being held in violation of the United States Constitution. (Case 3:19-cv-01300-BJD-JBT, Doc. 12.) The Grounds are as follows:

- <u>Ground 1</u>: Counsel failed to provide effective assistance of counsel to Movant by advising Movant to enter into a Proffer Agreement when the proffer agreement provided Movant with absolutely no protections and exposed Movant to additional crimes and increased penalties, all in violation of the Sixth Amendment of the United States Constitution.

- <u>Ground 2</u>: Counsel failed to provide effective assistance when counsel filed the Confidential Psychological Evaluation and Report as Exhibit to Sentencing Memorandum, DE #49-4. The report revealed additional abhorrent criminal activity, it was highly prejudicial, and did not provide useful mitigation in violation of the Sixth Amendment of the United States Constitution.

6

- Ground 3: Counsel failed to provide effective assistance of counsel to Movant regarding Movant's guilty plea in violation of the Sixth Amendment of the United States Constitution. Due to this ineffective assistance, Movant did not freely make a knowing and voluntary plea in violation of the Fifth and Sixth Amendments of the United States Constitution.

- Ground 4: Counsel was ineffective in the handling of various aspects relating to the sentencing in the case in violation of the Sixth Amendment of the United States Constitution.

- Ground 5: Once counsel advised Movant to proffer for the government, and had the Movant disclose additional criminal actions to law enforcement which was used against him at sentencing, counsel was ineffective in not securing any benefits for the movant in violation of the Sixth Amendment of the United States Constitution.

- Ground 6: Movant's sentence is disproportional when compared to the facts of the case and therefore amounts to cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

No new facts have been discovered regarding the merits of the underlying case. For the reasons discussed below, Petitioner Leslie respectfully prays the Court grant his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255.

### III.

### MEMORANDUM OF LAW

Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have. [Procedural rules] are designed for those who know [them], and they can become a source of entrapment for those who do not. Substantive criminal law also presents difficulties to the uninitiated.

*Justice Walter V. Schaefer of the Supreme Court of Illinois, Federalism and State Criminal Procedure*, 70 Harv. L. Rev. 1, 8 (1956).

### A. The Sixth Amendment

The adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." *Anders v. California*, 386 U.S. 738, 743 (1967). The Sixth Amendment exists to safeguard the rights of the accused by ensuring that all persons involved in criminal prosecutions are entitled to certain specifically delineated rights. Under the Sixth Amendment, in all criminal prosecutions:

> the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the *Assistance of Counsel* for his defense.

U.S. Const. amend. VI. (emphasis added). It is generally understood that the Constitution only guarantees the right to a fair trial, not a perfect one. *Riddle v. Ozmint*, 369 S.C. 39, 631 S.E.2d 70 (2006). However, one of the cornerstones of a fair criminal proceeding is the right to have assistance of counsel for one's defense. The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759 (1970). The most crucial and operative word being assistance of counsel. If merely having counsel was all that was warranted, the drafters would not have made it a point to include specific language.

Since 1984, the Supreme Court has ruled that the right to counsel implies the right to an effective lawyer. In *Strickland v. Washington*, the Court developed a two-prong test to devise whether a court-appointed attorney has given the proper amount of care to a client: 1) the error prong- whether counsel's performance is deficient under the circumstances, with performance measured by the standard of prevailing professional norms, and 2) prejudice prong- whether

counsel's performance affected the trial's outcome, as measured by reasonable probability. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

Where counsel's performance falls below prevailing industry standards and reasonably affected the outcome of the trial/sentencing, effective assistance of counsel is not present and constitutional violations have occurred. Where there is a guilty plea and not a trial the prejudice prong of the test changes.

> We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, supra, and *McMann v. Richardson*, supra. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

## B.  The Fifth Amendment

In pertinent part, the Fifth Amendment of the United States Constitution provides that no person shall "be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This amendment exists to further protect the rights of the accused. In all criminal prosecutions, clauses incorporated within the Fifth Amendment outline basic constitutional limitations regarding procedural matters. *Ex parte Wilson*, 114 U.S. 417, 5 S. Ct. 935, 29 L. Ed. 89, 1885 U.S. LEXIS 1776 (1885). Regarding self-incrimination, this Amendment protects defendants from having to incriminate themselves through testimony. As evinced in the landmark case of *Miranda v. Arizona*, the Supreme Court extended Fifth Amendment protections to

encompass any situation outside of the courtroom that involves the curtailment of personal freedom. *Miranda v. Ariz.*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

Commonly known as Miranda Rights, defendants have: the right to remain silent, the right to have an attorney present during questioning, and the right to have a government-appointed attorney if the defendant cannot afford one. In congruence with the Sixth Amendment, the right to a government-appointed attorney means the right to effective assistance of counsel that meets prevailing professional norms.  Unless the accused receives the effective assistance of counsel, "a serious risk of injustice infects the trial itself." *Cuyler v. Sullivan*, 446 U.S. 335, 343 (1980). As previously mentioned, and will be thoroughly outlined and detailed further below, where assistance of government-appointed counsel is so subpar that it does not meet the standard of professional norms, constitutional violations have occurred.

### C.  The Eighth Amendment

The constitutional rights detailed in the Eighth Amendment largely pertain to the punishment phase of criminal prosecution. The amendment was constructed to restrain governmental ability to cause harm to individuals. Specifically, the amendment states "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. For decades, the meaning of "cruel and unusual" has been debated in reference to original construction and modern application. The drafters originally intended this phrase to outlaw certain gruesome methods of punishment (torture, burning at the stake, or crucifixion). In more recent times, the definition has been broadened over past years to protect against punishments that are grossly disproportionate to the particular crime. In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that a sentence may not be disproportionate to the crime committed, regardless of whether the crime is a felony or a misdemeanor. The phrase

has evolved to regard standards of decency. For example, in the case at bar, because the proffer agreement provided no protections, it is cruel and unusual to sentence a defendant for criminal acts using enhancement factors the Government originally had no knowledge of and to which Mr. Leslie was ill-advised by his counsel to proffer to.

### D.  28 U.S.C. § 2255 Claims

Where there are grounds for reconsideration of a sentence for someone held in federal custody, U.S.C.S. § 2255 provides remedies on motion attacking sentence. In short, the provision details how a prisoner claiming certain rights may move the court to vacate, set aside or correct the sentence. Subsection (b) in pertinent part states:

> If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C.S. § 2255(b) (LexisNexis, Lexis Advance through Public Law 116-158, approved August 14, 2020).

This Court will now decide whether these claims have merit. They do. The standard for this is that the petitioner has just cause to and must show that "reasonable jurists would find the constitutional claims debatable or wrong," or that the issues on appeal "deserve encouragement to proceed further." *Banks v. United States*, No. 20-12012-BB, 2020 U.S. App. LEXIS 28632 (11th Cir. Sep. 9, 2020) (citing *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 524 (2000) (quotations omitted). It is imperative to note Mr. Leslie is not claiming innocence from the indicted counts. The crux of this appeal hinges on Mr. Leslie's constitutional

rights to have adequate and fair representation at all constitutionally protected stages of criminal litigation.

# III.
## ANALYSIS

### Ground One

Counsel failed to provide effective assistance of counsel to Mr. Leslie by advising Mr. Leslie to enter into a Proffer Agreement. The proffer agreement provided Movant with absolutely no protections. The information provided to the Government exposed Mr. Leslie to additional crimes and increased penalties. Facts from proffer sessions were included in the plea hearing and at sentencing. All of this was in violation of the Sixth Amendment of the United States Constitution. "We must not determine what the ideal attorney might have done in a perfect world, or what the average attorney might have done on an average day; instead, our case-by-case inquiry focuses on whether a particular counsel's conduct was reasonably effective in context." *Atkins v. Singletary*, 965 F.2d, 952, 958 (11th Cir. 1992). The actions of Mr. Leslie's counsel were not reasonably effective in context.

As commonly understood, a proffer agreement is a meeting between a criminal defendant/suspect and the government that typically takes place at the local United States Attorney's Office, not in a court. Present at such meetings are the defendant, defendant's counsel, a prosecutor and various other investigatory agents. The purpose of proffer meetings and agreements are simple: the defendant is expected to share with the government everything he knows about the crime in question and the people involved. In return for a defendant's cooperation, he is eligible for a favorable sentencing recommendation. Nothing in the proffer agreement shall bind the court. In order for the defendant to enter into such an agreement, the government will

typically provide the defendant with certain benefits to further incentivize the defendant telling the truth. Though no firm promises can be made regarding the outcome of the case, the government typically agrees not to use direct information provided by the defendant against him in court except under very limited circumstances. Also standard practice, should the defendant be found guilty, the government will not seek to enhance the offense level based on statements made at the proffer meeting(s).

The government cannot make direct use of proffered information. They may make derivative use of information, in accordance with *Kastigar v. United States*, 406 U.S. 441, 92 S. Ct. 1653 (1972). In short, the government may pursue investigative leads suggested by the defendant. The government may consider such aid as providing substantial assistance in the prosecution of another person who has committed an offense. This is recognized as a "5K1 motion." As stated in the U.S. Sent'g Guidelines Manual § 5K1.1 provides that "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." 18 U.S.C.S. app. § 5K1.1 (LexisNexis). Common knowledge posits no sound person with the assistance of adequate and proper counsel would voluntarily incriminate themselves for crimes the government had no knowledge of if there was no benefit regarding immunity or direct use. "… it was held that, under the Fifth Amendment to the Constitution, which declares that 'no person… shall be compelled in any criminal case to be a witness against himself,' a person cannot be compelled to disclose facts before a court or grand jury which might subject him to a criminal prosecution…" *Counselman v. Hitchcock*, 142 U.S. 547, 12 S. Ct. 195 (1892).

Here, Mr. Leslie was advised to sign an agreement that essentially held no legal protection. The letter was very clear in that the proffer agreement did not apply to violent crimes. It is clear

that Mr. Leslie was charged with violent crimes that are not protected by the proffer agreement.

Taken directly from Documents 20-1, PageID 109 and 20-1 PageID 111:

> Movant entered into a proffer agreement to provide law enforcement agents information about "potential violations of federal criminal laws involving, but not necessarily limited to violations of 18 U.S.C. § 2241, 2251, 2251A, and 2252 et. seq., pertaining to the sexual abuse and exploitation of children." However, in this case, the proffer agreement excluded immunity to "crimes of violence." Crimes of violence are defined in the proffer agreement to "include, but are not limited to, violations of 18 U.S.C. §§ 2241-2245, 2251, 2251A, 2252(g) – including conspiracy to violate these sections, attempt to violate these sections, and aiding and abetting violations of these sections – as well as the rape or sexual abuse of a minor."

(Case 3:19-cv-01300-BJD-JBT, Doc. 20-1.) The federal crimes that Mr. Leslie was expected to provide information about were the exact crimes excluded from immunity in the agreement.

A more blatant miscarriage of justice than incriminating himself, is that Mr. Leslie was legally advised to do so. It cannot be held as common standard practice for one's own counsel to advise them to sign an agreement that offers no protection. As previously stated, adequate assistance of counsel is what is commonly accepted in the profession. In its Response in Opposition to Mr. Leslie's Motion as found on page 11 of Doc. 20, the Government cites to *Waters v. Thomas* in referencing *Strickland*:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial… We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). The *Waters* passage highlighted by the Government is the very premise Mr. Leslie asserts as grounds for his ineffective assistance of

14

counsel. The totality of actions by Mr. Leslie's defense attorney do not constitute anything a "reasonable lawyer" would have done. An adversarial process cannot work "adequately" when there is no one advocating for the best interests of the accused.

Though all involved parties are seeking justice, the behavior of Leslie's previous counsel stands out as a stark instance of injustice. If one cannot adequately and zealous represent his client in accordance with the Florida Professional Rules of Conduct, withdrawal is proper. As stated in the Preamble of Rule 4 of the Florida Rules of Professional Conduct:

> A lawyer's responsibilities as a representative of clients, an officer of the legal system, and a public citizen are usually harmonious. Zealous advocacy is not inconsistent with justice. Moreover, unless violations of law or injury to another or another's property is involved, preserving client confidences ordinarily serves the public interest because people are more likely to seek legal advice, and heed their legal obligations, when they know their communications will be private.

FL Rules of Prof'l Conduct Rule 4, (2020). Nowhere can it be found that appointed counsel should advise their client to sign an agreement that further incriminates them. As plainly stated in the Presenting Report (which was relied upon during the sentencing hearing):

> Leslie later cooperated with law enforcement and provided his computer passwords. Forensic review of his electronic devices revealed approximately 33,000 images and videos of child pornography. These images include videos Leslie produced of the five aforementioned children… In subsequent proffer protected interviews, Leslie reported sexually abusing three additional children and taking photographs of a fourth child. Two of these belong to his former girlfriend, K.B.

("PSR" Case 3:16-cr-00154-BJD-JBT, Doc. 50, pg. 8, ¶ 16-17.) When Mr. Leslie was originally indicted and was counseled to sign the ill-advised proffer agreement, the government did not have sufficient evidence to warrant suggesting nothing less than a fifty (50) year sentence. Furthermore, the illusion of the "5.K1" only helped the Government further criminalize Mr. Leslie when they had full knowledge there was nothing he could provide them that would aid favorably in his

sentencing. "[[t]he issue is not what is possible or what is prudent and appropriate, but only what is constitutionally compelled." *Burger v. Kemp*, 483 U.S. 776, 795 (1987) (citing *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Mr. Leslie has a constitutionally compelled right to effective assistance of counsel. "Thus, counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy." *Darden v. Wainwright*, 477 U.S. 168, 186 (1986) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955))). To counsel one's client to sign a proffer agreement that provided no protection against the charges asserted, to counsel one's client to further incriminate himself, and to make public record of privileged documents cannot be considered sound trial strategy.

This case is a case of first impression simply because there is not any case law that evinces how such actions could ever be deemed proper or appropriate.

**Ground Two**

Counsel failed to provide effective assistance when counsel filed the Confidential Psychological Evaluation and Report as an exhibit to the sentencing memorandum, (3:16-cr-154-J-39JBT, Doc. 49, DE #49-4.) The report revealed additional abhorrent criminal activity, it was highly prejudicial, and did not provide useful mitigation in violation of the Sixth Amendment of the United States Constitution.

In support of Ground Two, it is the Government's own words as evidenced in the Sentencing Transcript that are most telling: "The psych report that was contained in the – attached to the sentencing memorandum, the Court know that oftentimes the United States will object to the admission of reports. We didn't object to the admission of the report this time for several reasons…". (Sentencing Transcript, Case 3:16-cr-00154-BJD-JBT Doc. 66, pg. 35, 1-6.) The

16

record in this case has multiple acknowledgements of how it is not common practice to include such a privileged document as a mere exhibit to the record. The Government directly acknowledged that "oftentimes" it objects to admission of such a report. However, when the admission of said document primarily serves to bolster the government's position, it was to the government's advantage to allow the report in. As stated in Exhibit 1 to the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody: "This confidential Psychological Evaluation and Report was so incriminatory, that the government did not object to its admission and instead welcomed the report." (Case 3:19-cv-01300-BJD-JBT, DOC 12-1, pg. 3.) Continuing: "In summary, to file such an inculpatory report, when the only benefit it added to the case was that the Movant had an official diagnosis of pedophilia, when the facts of the case made that perfectly clear without the report, denied the movant of his effective assistance of counsel." *Id.*

In the 2008 case *United States v. James MacEwan*, the court addressed the *Strickland* standards yet again. Here, Petitioner was charged with a three-count indictment for the receipt of child pornography in violation of 18 U.S.C. § 2252(A)(a)(2)(b). *United States v. MacEwan*, No. CIV. A. 07-3369, 2008 WL 862396 (E.D. Pa. Mar. 31, 2008). Petitioner argued that he was erroneously advised by his counsel and asserts his guilty plea and waiver of the jury trial were improperly influenced through coercion of his prior counsel. The court, citing *Strickland*, opined: "Even if Petitioner establishes that counsel's conduct was 'professionally unreasonable,' the Sixth Amendment is not violates unless there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The *MacEwan* court ultimately held that that Petitioner did not meet the necessary burden of showing that the result of his proceedings would have been

different. Mr. Leslie's case is distinguished from *MacEwan* primarily because of that very assertion. Mr. Leslie's motion and subsequent petition are based on the result of his proceedings and how his result would have been starkly different had he been afforded effective assistance of counsel.

Several courts have weighed in on things to consider when addressing ineffective assistance of counsel claims. *United States v. Donell Hatcher* was a possession with intent to distribute case, where there were several discrepancies regarding the knowing waiver of certain rights. *United States v. Hatcher*, No. CR 3:09-625 WBS, 2015 WL 13466140 (N.D. Cal. Feb. 5, 2015). Customary procedure of challenging the effectiveness of defense counsel was referenced by way of citing to the Ninth Circuit:

> The Ninth Circuit has indicated it "will not consider an ineffective assistance claim on direct appeal, unless [1] the record is sufficiently developed" so that the court can determine "what counsel did, why it was done, and what, if any, prejudice resulted" or "[2] the legal representation was obviously inadequate."

*Hatcher* at 3 (citing *United States v. Jackson*, 546 Fed.Appx. 643, 645 (9th Cir. 2013)).

It could not be considered sound trial strategy to include the psycho-sexual evaluation report to prove that defendant was a pedophile. It would be safe to that ninety-five (95) percent of people charged with the production of child pornography are pedophiles. Congress, with all its information, knew of pedophiles and nevertheless made this type of pornography illegal.

Mr. Leslie has made it a point to begin the process of sufficiently developing the record as to his claims so that a court can ascertain what his previous counsel did, why it was done, and how it has all unjustly prejudiced him. The noteworthy issue here is not determining whether the court would have definitively reached a different result, but rather the premise that there exists a reasonable probability sufficient to undermine confidence in the previous outcome.

18

**Ground Three**

Counsel failed to provide effective assistance of counsel to Mr. Leslie regarding Mr. Leslie's guilty plea in violation of the Sixth Amendment of the United States Constitution. Due to this ineffective assistance, Mr. Leslie did not freely make a knowing and voluntary plea in violation of the Fifth and Sixth Amendments of the United States Constitution.

> The plea agreement also stated that "defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney." This waiver does not make sense because of course Movant relied on information that was provided to him by his attorney in making decisions. That is the entire purpose of having effective assistance of counsel when charged with a crime.

(Case 3:19-cv-01300-BJD-JBT, DOC 12-1, pg. 4.) Mr. Leslie would have been better advised to plead guilty without the limitations of a Plea Agreement. The plea agreement limited his ability to appeal his sentence when the Government retained its full rights to appeal. The Government did not give any consideration for its portion of the deal. The Government did not waive any rights. The promise of a 5K1.1 cannot be consideration because the Government could file this motion even if it was not part of the plea deal.

Mr. Leslie would not have entered into a guilty plea, waiving most of his appeal rights regarding his sentence without the advice of his counsel. To reiterate, the Sixth Amendment exists to safeguard the rights of the accused by ensuring that all persons involved in criminal prosecutions are entitled to certain specifically delineated rights. U.S. Const. amend. VI. Mr. Leslie's rights were plainly violated when he was counseled to enter into a plea agreement that was entirely against his best interest.

**Ground Four**

Counsel was ineffective in the handling of various aspects relating to the sentencing in the case in violation of the Sixth Amendment of the United States Constitution. Though Movant's mother read a statement at his sentencing hearing, Leslie's counsel failed to present any witnesses or evidence at said hearing. (Case 3:19-cv-01200-BJD-JBT, Doc. 12, pg. 8.) It was Leslie's mother that provided counsel with many corrections to the pre-sentence report ("PSR"). It is not too far-fetched to understand that, at a bare minimum, adequate assistance of counsel would at least render an articulate review of all court documents to prevent errors and objections in the record. Leslie could not receive fair assistance of counsel by someone who was either not aware, or not concerned, with the variety of errors in court documentation. "Even with the noted objections and corrections, some inaccuracies remained in the pre-sentence investigation report. This failure deprived Movant of effective assistance of counsel." *Id*.

**Ground Five**

Once counsel advised Movant to proffer for the government, and had the Movant disclose additional criminal actions to law enforcement which was used against him at sentencing, counsel was ineffective in not securing any benefits for the movant in violation of the Sixth Amendment of the United States Constitution. Counsel did not meet this minimum requirement of simply advocating for his client, it was as if Leslie was not represented at all. "Counsel allowed the Movant to be fully de-briefed by the government without negotiating or attempting to negotiate any benefit for Movant, either through a more favorable plea agreement or a recommendation by the government of a sentencing reduction to the court that the sentencing hearing." (Case 3:19-cv-01300-BJD-JBT, Doc. 12-1, pg. 5.) *See* arguments *supra*.

**Ground Six**

Mr. Leslie's sentence is disproportional when compared to the facts of the case and therefore amounts to cruel and unusual punishment. This is in violation of the Eighth Amendment of the United States Constitution. Mr. Leslie has not, and does not, discount the seriousness of the offenses involved in his case. One must consider "only the facts known to the government" before Mr. Leslie's proffer or psychological report were introduced. He was charged with production of child pornography regarding two (2) children. In order to gauge this crime when compared to other child pornography production cases, "one must look candidly at the factors involved." (Case 3:19-cv-01300-BJD-JBT, Doc. 12-1, pg. 6.)

The only way the Government had knowledge of other criminal behavior was through the introduction of a proffer agreement that offered no viable protections to Mr. Leslie and because of a privileged document becoming part of the record. Had Mr. Leslie had representation even equal to what is accepted as the industry standard, the Government would not have any just cause to favor a maximum sentence. The actual charges Mr. Leslie faced, while very much a disquieting factor, would not have warranted the sentence that was executed if adjudicated properly. For these reasons, a sentence at the top of the guideline range is not in proportion to the facts of this case. A sentence of sixty years amounts to cruel and unusual punishment for Mr. Leslie. Additionally, in light of Mr. Leslie's appointed counsel's lack to effective assistance in accordance with acceptable industry practices, it is cruel and unusual to not grant Mr. Leslie a new trial with adequate representation.

# IV.

## <u>CONCLUSION</u>

WHEREFORE, Mr. Leslie respectfully requests this Honorable Court grant the Motion to Vacate, Set Aside, or Correct Judgment and Sentence by a Person in Federal Custody. The egregiousness with which Mr. Leslie was not afforded effective assistance of counsel as a right, granted by the United States Constitution, disproportionately prejudiced the case and subsequent sentencing. In accordance with 28 U.S.C.S. § 2255, Mr. Leslie respectfully requests this Court vacate the guilty plea and set aside the judgment and resentence him or correct the sentence as may appear appropriate.

Respectfully Submitted,

JENNIFER LYNN THOMPSON
Attorney at Law

<u>s/ *Jennifer Lynn Thompson*</u>
Attorney for Petitioner
810 Broadway, Suite 305
Nashville, TN 37203
Telephone:    (615) 601-2484
Facsimile:     (615) 246-4111
Email: nashvilleattorney@gmail.com

**LESLIE v. UNITED STATES**                    **Case No. 3:19-cv-1300-J-39JBT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 28, 2020, I electronically filed this document with the Clerk of the Court by using the CM/ECF system, and the notice of electronic filing was sent to the following CM/ECF participants:

D. Rodney Brown, Esq.

Charles L. Truncale, Esq

Lauren E. Britsch, Esq.

<u>s/ *Jennifer Lynn Thompson*</u>
JENNIFER LYNN THOMPSON
Attorney for Petitioner